## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RHELDA HOSTETLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-05-253-FHS |
| | ) | |
| BONNIE DREWERY; JUSTIN GREEN; | ) | |
| CHOCTAW COUNTY, OKLAHOMA; and | ) | |
| CHOCTAW COUNTY SHERIFF, LEWIS | ) | |
| COLLINS, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Rhelda Hostetler ("Hostetler") brings this civil rights action pursuant to the authority of 42 U.S.C. § 1983 claiming Defendants violated her constitutional rights in connection with an alleged sexual assault committed against her on March 18, 2004, by a male trusty, Bonnie Drewery ("Drewery"), while Hostetler was incarcerated in the Choctaw County jail.[1] In addition to bringing this action against Drewery, Hostetler has named Justin Green ("Green"), a Choctaw County jailer, Lewis Collins ("Collins"), the Choctaw County Sheriff, and Choctaw County, Oklahoma ("Choctaw County"), as defendants.[2] Hostetler

---

[1] Hostetler's claims are set forth in her Amended Complaint, filed on December 22, 2005.

[2] Hostetler also brought suit against Justin Jones ("Jones"), Director of the Department of Corrections. Jones, however, has been dismissed from this action in both his individual and official capacities. See Docket Nos. 43 and 52.

1

also asserts state law tort claims under the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et seq.* against Drewery, Green, Collins, and Choctaw County for negligence, battery, and intentional infliction of severe emotional distress. Before the Court for its consideration are the following motions: Green's Motion for Summary Judgment (Docket No. 80), Collins's Motion for Summary Judgment (Docket No. 78), and Choctaw County's Motion for Summary Judgment (Docket No. 79).[3] For the reasons stated below, the Court finds summary judgment should be granted on all claims as to Green, Collins, and Choctaw County, with the exception of Hostetler's Fourteenth Amendment claim against Green for failure to protect against an inmate attack.

## BACKGROUND

On March 18, 2004, Hostetler was arrested for traffic violations and was placed in the Choctaw County jail. Green began his shift as jailer at 5:58 p.m. on March 18, 2004, and signed out at 6:10 a.m. on March 19, 2004. Prior to March 18, 2004, Green did not know and had never met Hostetler. During the course of his shift on the evening of March 18, 2004, Green performed the task of picking up inmates' food trays from their cells. Green was assisted in this task by Drewery, a male trusty, who was a convicted felon assigned to the Choctaw County jail by the Oklahoma Department of Corrections. Drewery's

---

[3] No summary judgment motion has been filed on behalf of Drewery. On January 17, 2008, Hostetler filed a motion for default judgment against Drewery (Docket No. 81). That motion is still pending.

2

convictions involved property crimes and he had no known history of sexual assaults. Green had no knowledge of the nature of Drewery's convictions.

Around 8:00 p.m. on March 18, 2004, Green and Drewery began picking up dinner trays from the inmates' cells. Earlier that evening, Green and Drewery had delivered the food trays to all the inmates, including Hostetler. Although the cell doors had an opening for the placement and retrieval of food trays, it was Green's practice to deliver and retrieve the food trays by opening the cell door. When Green arrived at Hostetler's cell to retrieve the food tray, he opened Hostetler's cell door to allow Drewery to enter the cell. Green did not enter Hostetler's cell. Rather, Drewery entered Hostetler's cell and retrieved the food tray and placed it on a cart outside the cell. After doing so, Drewery reentered Hostetler's cell and began talking with Hostetler who was by the cell door. Green was standing outside the cell by the opened cell door and instructed Drewery to come back out of the cell. Drewery ignored Green. After getting no response from Drewery, Green told Drewery two or three more times that he needed to hurry up and get out of the cell. Again, Drewery ignored Green's demands and remained in the cell. At this point, Green pushed the cell door shut with Drewery remaining in the cell with Hostetler. In his deposition, Green testified he shut the door because he had to retrieve trays from other inmates and because some inmates asked for headache medication which he had to secure and dispense. According to Green, Drewery was in Hostetler's cell for no more than ten minutes. Green returned to Hostetler's cell and heard knocking

3

on the door. Green opened the cell door and Drewery walked out. Hostetler was standing right inside the door and she didn't say anything to Green. As Drewery walked out he told Green that Hostetler was "crazy." Green asked Drewery what he had done in the cell and Drewery responded "nothing."

Hostetler contends Drewery raped her while he was in her cell. In her deposition, Hostetler testified she took two or three bites of her food and went to sleep. When she awoke, Drewery was standing by her bunk bed. She testified she did not know how Drewery had gotten into her cell. Hostetler claims Drewery prevented her from getting off the bottom bunk bed and that he proceeded to rape her.

On March 19, 2004, Hostetler was booked out of the Choctaw County jail. Rita Duncan ("Duncan"), the Choctaw County Jail Administrator, was present when Hostetler checked out and Hostetler did not mention or report the alleged sexual assault. Duncan first became aware of Hostetler's allegations of sexual assault when she received a call from Hostetler around 4:30 p.m. on March 19, 2004.[4] During that phone conversation, Hostetler asked to speak to the sheriff, Collins. When Duncan informed Hostetler that Collins was unavailable, Hostetler proceeded to tell Duncan about her allegations of being sexually assaulted, but she did not provide Duncan with any names. After Collins was notified of the allegations, he ordered the female cell in the

---

[4] Hostetler also testified at her deposition that her father made a phone call to the jail on March 19, 2004.

4

jail sealed in order to preserve any evidence. Collins immediately contacted the Oklahoma Bureau of Investigation and requested a formal investigation. Collins thereafter learned of Green's possible involvement in the sexual assault incident and he temporarily suspended Green from duty on March 19, 2004. On March 25, 2004, Green was terminated from his employment with the Choctaw County Sheriff's Department.

All employees of the Choctaw County jail, including Green, are provided jail orientation training which includes security and safety issues such as the absolute segregation of male and female inmates. The Choctaw County jail has a policy regarding female inmates requiring female inmates to be separated from male inmates from the point of entry into the jail until the time of release. Green was aware of this policy on March 18, 2004, when the alleged sexual assault took place. Green also completed thirty-nine hours of correctional officer training from October 11, 2003, through November 2003. This training included instruction on supervision of prisoners, the rights and responsibilities of inmates, and Oklahoma Jail Standards. On November 20, 2003, Green passed the exam on Oklahoma minimum jail standards. Prior to the March 18, 2004, alleged sexual assault, no similar events of a jailer permitting a male inmate to enter a female inmate's cell had taken place. Moreover, prior to March 18, 2004, no complaints had been filed with Collins regarding Green or any other jailer allowing male inmates into female inmates cells.

## SUMMARY JUDGMENT STANDARDS

The standards relevant to the disposition of a case on summary judgment are well established. Having moved for summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure, Defendants' initial burden is to show the absence of evidence to support Hostetler's claims. Celotex v. Catrett, 477 U.S. 317, 325 (1986). Defendants must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. Universal Money Centers v. AT&T, 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S.Ct. 655 (1994) (quoting Fed. R. Civ. P. 56(c)). Defendants' need not negate Hostetler's claims or disprove her evidence, but rather, their burden is to show that there is no evidence in the record to support her claims. Celotex, 477 U.S. at 325. Hostetler, as the nonmoving party, must go beyond the pleadings and "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [she] carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

Summary judgment is not appropriate if there exists a genuine material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51 (1986). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict

for the non-moving party.'"  Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248).  In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to Hostetler. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### FAILURE TO PROTECT AGAINST INMATE ATTACK - GREEN

Hostetler contends that Green violated her constitutional rights by failing to protect her from being sexually assaulted by Drewery.  As a pretrial detainee, Hostetler was entitled to certain constitutional protections, including the right to be free from inmate attacks such as the sexual assault allegedly committed against her by Drewery. Hovater v. Robinson, 1 F3d 1063, 1068 (10th Cir. 1993).  Such a claim has its genesis in the Fourteenth Amendment's guarantee of due process of law. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996).  This claim, however, is analyzed under the Eighth Amendment's "deliberate indifference" standard.[5] Lopez v. LeMaster, 172 F.3d

---

[5]  In her Amended Complaint, Hostetler invokes the Fourth, Fifth, Eighth, and Fourteenth Amendments as the constitutional bases for her failure to protect against inmate attack claim. The parties' briefing, however, recognizes the constitutional source of Hostetler's claim under the Fourteenth Amendment, as analyzed under the Eighth Amendment deliberate indifference standard.  Thus, it is not appropriate, nor is there any need to

756, 759 n. 2 (10th Cir. 1999). In this context, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). Two elements must be established to sustain a failure to protect claim: First, a pretrial detainee "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. Second, the pretrial detainee must establish that the jail official was deliberately indifferent to the detainee's health or safety. Id. The jail official's state of mind is measured by a subjective standard, rather than an objective one. That is, the jail official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Green contends he is entitled to summary judgment on Hostetler's failure to protect claim because the evidence establishes that he did not have subjective knowledge of a known risk of harm to Hostetler and because he was not deliberately indifferent to such known risk of harm. Although admittedly a close call, the Court disagrees with Green and finds that in examining the record and reasonable inferences in the light most favorable to Hostetler, there are genuine issues of fact which preclude the entry of summary judgment in favor of Green. There is sufficient evidence to establish that Green subjectively appreciated the risk of harm to Hostetler in allowing Drewery to

---

address Hostetler's constitutional claim under either the Fourth or Fifth Amendments.

8

remain in her cell.  The evidence suggests that Green was aware of the jail policy of not allowing male inmates access to cells in which females were held and of the rationale for such policy, i.e. inmate safety and protection from possible sexual assaults. Green suggests liability cannot be imposed on him absent knowledge on his part that Drewery posed a particularized threat to Hostetler, as opposed to the more generalized threat posed by allowing any male inmate to remain in a female inmate's cell. The Court rejects this construction of the standard set forth in Farmer and finds that the evidence presents a genuine issue of fact as to whether Green drew the inference that a substantial risk of serious harm to Hostetler existed when he allowed Drewery to remain unsupervised in Hostetler's locked cell for upwards of ten minutes.  Whether Green drew this inference from the information known to him and whether he thereafter acted with deliberate indifference in closing the door and leaving Drewery in Hostetler's cell are issues of fact for determination by the jury and they are not capable of resolution as a matter of law under the record presented.

Green also asserts an entitlement to summary judgment on the basis of qualified immunity.  The affirmative defense of qualified immunity is available to all government officials. Harlow v. Fitzgerald, 457 U.S. 800 (1982).  This is an immunity from suit and not merely a defense to liability.  Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 644-45 (10th Cir. 1988) and England v. Hendricks, 880 F.2d 281 (10th Cir. 1989), cert. denied, 493 U.S. 1078 (1990).  The test the Court must apply is an objective one which inquires into the objective

9

reasonableness of the official's actions. Harlow, 457 U.S. at 816. Government officials performing discretionary functions will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; see also Clanton v. Cooper, 129 F.3d 1147, 1153 (10th Cir. 1997)(quoting Harlow). Green argues qualified immunity is appropriate because Hostetler cannot establish that a constitutional violation has been committed by Green. As the Court has held there are genuine issues of fact on Green's subjective knowledge of the threat posed to Hostetler and on whether Green thereafter acted with deliberate indifference, Green's qualified immunity argument must likewise fail due to these unresolved factual issues. Consequently, Green's motion for summary judgment on Hostetler's Fourteenth Amendment failure to protect claim is denied.

## COUNTY LIABILITY ON CLAIM OF FAILURE TO PROTECT AGAINST INMATE ATTACK - COLLINS AND CHOCTAW COUNTY

Hostetler seeks to impose liability on Choctaw County by bringing suit against Collins in his official capacity as sheriff of Choctaw County and against Choctaw County directly.[6]

---

[6] Choctaw County contends that by naming "Choctaw County, Oklahoma" and not the "Board of County Commissioners of the County of Choctaw" as required by 19 O.S. § 4, Hostetler has failed in her attempt to hold Choctaw County liable. The Court will not address this argument as it concludes there is no basis for county liability under the record before it. The Court does note, however, that this argument is somewhat specious as Choctaw County is clearly on notice of this suit and Hostetler's attempt

10

Hostetler's official capacity suit is an attempt to hold Choctaw County accountable for the alleged constitutional deprivation. As the Supreme Court has recognized, official capacity suits are simply another way of suing the municipality or the governing body itself. Kentucky v. Graham, 473 U.S. 159, 163 (1985). A municipality or governing body cannot be held liable in a §1983 action for the acts or omissions of its employees or agents on the basis of respondeat superior. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694-95 (1978). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under §1983." Springfield v. Kibbe, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting) (quoting Monell, supra, at 694). The municipality or governing body itself must cause the constitutional violation in the sense that "[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1984). Thus, the Supreme Court has

---

to ultimately hold Choctaw County liable for the alleged civil rights violation and state law tort claims. A more reasoned approach might have been to cooperate with Hostetler's counsel in seeking the substitution of the proper party. Had it not granted summary judgment in favor of Collins in his official capacity and Choctaw County, the Court most certainly would have granted leave to substitute the proper party.

Choctaw County also argues that it cannot be held liable for the alleged constitutional violation as the sheriff, not the board of county commissioners, is responsible for the operation of the jail. See 19 O.S. § 513. This argument is of no moment, however, as Collins is sued in his official capacity as sheriff. In other words, the county is sued through Collins.

emphasized that a municipality or governing body is only liable when the official policy is the "'moving force' behind the injury alleged." Board of County Commissioners v. Brown, 520 U.S. 397, 404 (1997).

Hostetler contends the necessary governmental policy or custom is reflected in the failure of Collins and Choctaw County to provide adequate training to Green. County liability arising from a failure to adequately train jail officials in the handling of incarcerated individuals must result from the county's "deliberate indifference" to its inhabitants, i.e. it must "reflect[] a 'deliberate' or 'conscious' choice by a [county]." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). This "deliberate indifference" standard requires the county to have "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." Barney v. Pulsipher, 143 F.3d 1299, 1307 (citing Brown, 520 U.S. at 407). Typically, this notice requirement can be satisfied by the existence of a pattern of tortious conduct. Brown, 520 U.S. at 407. "In a 'narrow range of circumstances,' however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a [county's] action or inaction, such as when a [county] fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." Barney, 143 F.3d at 1307-08 (citing Brown, 520 U.S. at 409; Canton, 489 U.S. at 390 n.10).

12

Here, the record is wholly insufficient to establish liability against Choctaw County. The undisputed facts establish that Green received thirty-nine hours of correctional training, including training on the supervision of inmates and the requirement to segregate male and female inmates. Both jail standards and Sheriff's Office policy - both of which Green was aware of and instructed on - mandate that female inmates will be separated for male inmates from point of entry into the jail until release. Green, himself, demonstrated his awareness of such policy when he testified that it is a matter of common sense to segregate female and male inmates. Moreover, prior to this March 18, 2004, incident there were no reported instances of male and female inmates being placed in the same cell so as to put Collins and Choctaw County on notice of the need for additional training in this area and neither Collins nor Choctaw County had received any complaints about Green or any other jailer allowing male inmates into female inmates' cells. Thus, the undisputed evidence before the Court fails to suggest, much less establish, any deliberate indifference on the part of Choctaw County with respect to the training of jail officials, like Green, on the need to segregate male and female inmates. Consequently, Collins, as sued in his official capacity, and Choctaw County are entitled to summary judgment in their favor on Hostetler's constitutional claim under the Fourteenth Amendment for failure to protect against inmate attack.

**STATE LAW CLAIMS - GREEN, COLLINS, AND CHOCTAW COUNTY**

In their motions for summary judgment, Green, Collins, and Choctaw County also seek the dismissal of all state law claims against them by asserting the immunity and exemption provisions of the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et seq*. Hostetler has wholly failed to respond to these arguments in her responses to Defendants' respective motions. Hostetler has therefore conceded that Green, Collins, and Choctaw County are entitled to summary judgment in their favor with respect to the state law tort claims of negligence, battery, and intentional infliction of severe emotional distress. Moreover, the Court independently finds that summary judgment is appropriate in favor of Green, Collins, and Choctaw on these state law tort claims on the basis of the immunity afforded employees under 51 O.S. § 152.1(A) - as to Green and Collins - and the jail operations exception under 51 O.S. § 155(24) - as to Choctaw County. Consequently, Green, Collins, and Choctaw County are entitled to summary judgment in their favor on all state law tort claims asserted by Hostetler.

**CONCLUSION**

Based on the foregoing reasons, Collins's Motion for Summary Judgment (Docket No. 78) and Choctaw County's Motion for Summary Judgment (Docket No. 79) are granted in their entirety. Green's Motion for Summary Judgment (Docket No. 80) is granted on all claims asserted against Green with the exception of Hostetler's

Fourteenth Amendment claim against Green for failure to protect against an inmate attack.

It is so ordered this 19th day of February, 2008.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma